Tammy LUEDEMANN and Doyle Luedemann *v.* Tyson WADE

95-769                                     913 S.W.2d 773

Supreme Court of Arkansas
Opinion delivered January 22, 1996

162

*Henry, Walden & Halsey*, by: *Troy Henry*, for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Mark Alan Mayfield*, for appellee.

ROBERT H. DUDLEY, Justice. On April 30, 1993, plaintiff Tammy Luedemann was driving her automobile on a rain-slick street in Jonesboro. Her car was the second automobile in a

three-car string of vehicles going the same direction. Her car was about three car lengths behind the lead car. The lead car began to slow down, and plaintiff likewise began to slow her car. Defendant Tyson Wade was driving the third vehicle, his pickup truck, about two-and-a-half car lengths behind plaintiff's car. Defendant testified that he saw the lead car start to slow down, saw plaintiff's brake lights come on, and, as plaintiff's car was slowing down, it started sliding from side to side or "fishtailing." Defendant's pickup struck the rear of plaintiff's car. Plaintiff's car caromed across the center line and struck two other vehicles. Plaintiff sustained physical injuries, property damage, and loss of wages. She and her husband filed suit against defendant. After a three-day trial the jury found that the accident was 80% fault of defendant and 20% fault of the plaintiff, and awarded $6,025.78 for plaintiff's personal injuries and $7,023.20 for her property damages. Plaintiff filed a motion for a new trial in which she alleged that the verdict for personal injuries was too small and was clearly against the preponderance of the evidence. The trial court denied the motion for a new trial, and plaintiff appeals. We affirm.

Plaintiff's first assignment of error is that the trial court committed error in an evidentiary ruling. The point is well taken, but the error was harmless.

The point came about in the following manner. Plaintiff called defendant as her first witness in her case-in-chief, and he testified, in part, as follows:

Q. It was raining and wet?

A. Yes, sir.

Q. Sir?

A. Yes, sir.

Q. And you were going about 30 or 35 miles per hour?

A. Yes.

Q. Is that right?

A. Yes, sir.

Q. And how far were you behind her car?

A. Two to two-and-a-half car lengths.

Q. Two, two-and-a-half car lengths. At some point did her car start slowing down?

A. It started — her brakes came on and like she was going to start to slow down and her car started swerving — lost control of her car and started swerving off the road.

Plaintiff's second witness was the police officer who investigated the accident. On direct examination, plaintiff's counsel asked the officer about the accident scene. In testifying about those facts, he stated that he arrived on the scene "minutes" after the accident. On cross-examination, defendant's counsel asked the officer to repeat a statement defendant gave him at the scene about the way the accident occurred. Plaintiff objected to the hearsay statement. The trial court correctly sustained the objection. Rule 801 of the Arkansas Rules of Evidence defines hearsay as a statement made by the declarant while testifying at the trial and offered into evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). The trial court then asked defense counsel if the statement could be qualified as an excited utterance under Ark. R. Evid. 803(2) by establishing the time interval between the accident and the statement and establishing the defendant's appearance and emotional state. Counsel did not pursue the suggested line of questioning, but rather asked questions about the policeman's routine in investigating accidents. Counsel then again asked the officer what the defendant told him about the accident and the trial court, over plaintiff's renewed objection, ruled that the officer could answer. The ruling was in error.

■■ The theory of the excited utterance exception is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. *Greenlee* v. *State*, 318 Ark. 191, 884 S.W.2d 947 (1994). For the statement to be an excited utterance, it would have been necessary to establish that the utterance was made soon enough after the accident for it to reasonably be considered a product of the stress of accident, rather than of intervening reflection or deliberation. *Id*. at 199, 884 S.W.2d at 951 (citing *Smith* v. *State*, 303 Ark. 524, 530, 798

S.W.2d 94, 97 (1990)). An excited utterance must have been made before there was time to contrive and misrepresent; that is, it must have been made before reflective and deliberative senses took over. *Russell* v. *State*, 306 Ark. 436, 815 S.W.2d 929 (1991). The defendant did not establish that he made the statement to the policeman before he had the ability to reflect and deliberate about his statement. Thus, the trial court erred in its ruling. Even so, the error was harmless.

The hearsay testimony of the policeman was as follows:

Q. Please refer to your report.

A. He said basically what I wrote down that Luedemann began skidding and lost control in front of him in response to a vehicle in front of her slowing to turn.

Q. And just to complete it, he was—

A. He was unable to stop, also, and struck Luedemann from behind.

■ The hearsay testimony given by the policeman about the defendant's statement was identical to the direct testimony of the defendant. The plaintiff introduced the defendant's direct testimony in her case-in-chief. Thus, it is difficult to afford meaning to her argument about prejudice since she had already introduced the identical testimony. In addition, two other witnesses, Ronnie Sammons and Bryan Dugger, fully corroborated the testimony. They observed the accident, and their testimony was not hearsay; thus, the hearsay testimony was cumulative evidence. *See Callahan* v. *Clark*, 321 Ark. 376, 901 S.W.2d 842 (1995). We have repeatedly held that "an evidentiary error is harmless if the same or similar evidence is otherwise introduced at the trial." *Williams* v. *Southwestern Bell*, 319 Ark. 626, 893 S.W.2d 770 (1995); *Shamlin* v. *Shuffield*, 302 Ark. 164, 787 S.W.2d 687 (1990); *Thompson* v. *AAA Lumber Co.*, 245 Ark. 518, 432 S.W.2d 873 (1968). This doctrine is now embodied in Ark. R. Evid. 103(a), which provides that error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected.

Appellant next contends that the trial court erred in deny-

ing her motion for new trial because the award of damages was too small. Appellant claimed $7,023.30 in property damage, $15,020.19 in medical expenses for personal injury, $523.60 for travel to receive medical treatment, and $12,758.60 in lost wages. She was under treatment from the date of the accident, April 30, 1993, through November of 1994. She testified that she was unable to return to her job at Wal-Mart after October of 1993. She produced exhibits detailing her costs for hospital treatment after the accident, treatment by eight different physicians and two physical therapists, prescription drugs, radiology reports, and various documents and letters from the treating physicians. She contended that her injuries required her to make 109 trips to various medical-care providers.

The jury found that appellee was 80% negligent and appellant was 20% negligent. It awarded damages of $6,025.78 for personal injuries and $7,023.20 for property damages.

■ Error in the assessment of the amount of recovery, whether too large or too small, is a ground for new trial even in the absence of other trial error. *Kempner* v. *Schulte*, 318 Ark. 433, 885 S.W.2d 892 (1994). An important issue is whether a fair-minded jury could have reasonably fixed the award at the challenged amount. *Smith* v. *Pettit*, 300 Ark. 245, 778 S.W.2d 616 (1989). When the primary issue on a motion for new trial is the alleged inadequacy of the damages and not a question of liability, this court will sustain unless there is a clear and manifest abuse of discretion. *Id.* This standard is similar to the one followed when the primary issue is liability and the trial judge has granted a new trial. *Kempner* v. *Schulte*, 318 Ark. at 435, 885 S.W.2d at 893 (quoting *Warner* v. *Liebhaber*, 281 Ark. 16, 661 S.W.2d 399 (1983)). The facts are viewed in a light most advantageous to the appellee. *Id.* at 436, 885 S.W.2d at 893.

■ We do not know the exact manner in which the jury arrived at $6,025.78 for personal injuries. However, the jury did find comparative fault of 20%, and such a finding would allow for a deduction in recovery. *Gilbert* v. *Diversified Graphics*, 286 Ark. 261, 691 S.W.2d 162 (1985). In addition, the jury could have refused to believe plaintiff's testimony about her continuing pain and could have concluded that the extended period of recovery was not necessary. *Id.* at 262, 691 S.W.2d at 163-64. The

jury is not required to accept a party's testimony as undisputed even when uncontradicted or unimpeached. *Olmstead* v. *Moody*, 311 Ark. 163, 842 S.W.2d 26 (1992). It is within the province of the jury to determine credibility and decide whom to believe. *Id.* Thus, we cannot say that the trial court abused its discretion in denying the motion for a new trial.

■ Next plaintiff argues that Act 424 of 1993 in effect shifts the burden of proof from plaintiff to defendant when the plaintiff has brought forth evidence of medical expenses, because that act removes the requirement of expert testimony regarding the reasonableness of medical expenses. This argument was not raised in the trial court, and we will not consider an argument raised for the first time on appeal. *Hodges* v. *Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995).

Affirmed.